# Meanor *against* M'Kowan.

To construe a written agreement, the whole instrument must be taken into view, and not merely particular expressions.  Hence the words " on condition" may be construed to mean " on the terms," in order to effectuate the intention of the parties.

The Court of Common Pleas has jurisdiction under the Act of 31st of March 1792, for the proof and execution of all contracts for the sale of land made on a valuable consideration, whether for money or otherwise : and the decree of the court for the execution of such contract is conclusive between the parties.

ERROR to the Common Pleas of *Westmoreland* county.

This was an action of ejectment by William Meanor and Catherine his wife against Daniel M'Kowan, John Williams, and John Browski, for a tract of land.   Jacob Haymaker married the daughter of Michael Rugh, and had by her issue three children.   The original title to the land in dispute had been in Michael Rugh, and by an arrangement between him and his son-in-law, the latter went into possession of the land and claimed it as his own.   Mrs. Haymaker afterwards died, and Jacob Haymaker married again and had children by his second wife.  A controversy then arose between Rugh and Haymaker about the land, which they agreed to refer to arbitrators, but, pending the reference, entered into the following agreement :

[Meanor v. M'Kowan.]

" It is agreed by the parties that the contest as to the PokeRun place be given up, on condition that Mr Rugh shall, in a reasonable time, convey to Jacob Haymaker's three daughters, to wit, Sarah, Phebe, and Lucetta, in equal shares, the whole of the Poke Run place, containing 300 acres, more or less, by a deed in fee-simple, and clear of any encumbrance whatever : that on said Rugh's doing so, said Haymaker quits all claims to said place. To which we bind ourselves, our heirs, executors, administrators, and every of them, in the penal sum of $3000, current money of the United States. In testimony of which we set our hands and seals the 25th of July 1818."

In 1820, Michael Rugh died, and his daughter Catherine, the wife of the plaintiff, was born after his death. In 1821, the administrator of Michael Rugh, deceased, presented a petition to the Court of Common Pleas for leave to prove the contract between his intestate and Jacob Haymaker; and the contract was proved, and a deed executed to the three daughters of Michael Rugh and their husbands. Under this title the defendants claimed.

WHITE, President, thus charged the jury :—" At the date of this contract both parties claimed the land, and the object of this compromise was to settle all disputes concerning it. This would be a valid consideration for a compromise. It was not necessary that the claim of Haymaker should be a legal claim, nor that it was such that he could recover in a court of law. It is sufficient that both parties claimed the land; and if the agreement had been a division of it between them, it would have been binding and obligatory on the parties, and the settlement of the dispute would be a sufficient consideration. The consideration of Rugh's agreement to convey was the relinquishment of Haymaker's claim ; and Rugh obtained by it what he alleged he always desired, securing the title to his own descendants. It is alleged that this compromise was on condition that Rugh should convey, and as he never did convey, the condition was broken and the title remained in him, and if he did not perform, Haymaker might have rescinded the contract and been restored to his original rights. But he never appears to have done so. On the contrary, the presumption arises from the endorsement on the contract in the handwriting of the Recorder, " to Jacob Haymaker," that he procured the contract to be proved for the purpose of laying the foundation of calling on the administrators for a deed ; and a deed was executed in consequence of these proceedings. There is no provision that Haymaker is to make any further release or do any further act. So that there is no evidence that Haymaker ever elected to rescind the contract. But no man can by his own act or his own default rescind a contract without the consent of the other party. It is true the terms of the contract are " on condition ;" but there is no magic in words; the court must look at the whole instrument, and say what was the intention of the parties when they entered into

[Meanor v. M'Kowan.]

the agreement, and if that can be effected without overthrowing some unbending rule of law, it is their duty to do so. And by the terms of this contract we instruct you that Rugh was bound to convey, if Haymaker never violated the contract on his part; and that Rugh has no right to say that, because the words " on condition" are introduced into the article, his representatives can allege his default as a reason for rescinding the contract.

*Coulter* and *Foster*, for plaintiff in error, argued that the paper of the 25th of February 1818 was but a conditional agreement, which, if not performed by either party, fell to the ground. At all events, it was not such a contract for the sale of land as was embraced within the provisions of the Act of 1792. 3 *Watts* 60. There was not such a consideration as would support the agreement and compel the execution of a deed. 2 *Wheat.* 336; 2 *Leigh* 569; 2 *Gill & Johns.* 209; 1 *Watts* 216; 2 *Penn. Rep.* 531. There was no act done by the parties to consummate the agreement, and after the death of Rugh, Haymaker might have released his title or not as he pleased; and as he never did do so, the presumption is that he rescinded the contract. Rugh's heir should not be bound by the contract, if the other party was not, and never executed it on his part. It was a condition precedent to the title. 2 *Vern.* 116; *Shep. Touch.* 115; 2 *Dall.* 317.

*Armstrong, contra*, argued that the decree of the Court of Common Pleas was conclusive of the title; and if so, it put an end to the cause. But the agreement was perfect in all its parts. A compromise, or the relinquishment of a doubtful right, is always a sufficient consideration for a contract. Then clearly Rugh agreed to convey his title to his grandchildren in consideration that Haymaker would relinquish his claim; and this vests such an equitable title in them, as will protect them and those claiming under them in ejectment.

The opinion of the Court was delivered by

SERGEANT, J.—It is impossible to consider the agreement of the 25th of February 1818, as anything else than a final adjustment of the disputes between the grandfather and the son-in-law, on certain terms which both were interested in effecting; that is to say, that the whole property should be vested in the grandchildren. The release of a claim is a sufficient consideration for a compromise, and that there were claims by both these parties is abundantly proved. But it is said the agreement contains a condition which has not been performed, the grandfather dying without executing a deed. I am of opinion that this agreement was not conditional but absolute; that it bound both parties, and that neither could afterwards rescind it. The intent of the parties to close all disputes is plain, from the nature of the stipulations, as

[Meanor v. M'Kowan.]

well as the introductory words, by which the contest as to the place is to be given up. The word *condition*, as used, is obviously employed to express the same as *terms* of the agreement: as if it had read, "it is agreed the contest be given up, on the terms following," &c. To construe agreements, the whole instrument must be looked at, and not merely particular expressions. Hence words of condition are often construed as words of covenant or agreement to effect the design of the parties, and *vice versâ*. *Campbell* v. *Shrum* (3 *Watts* 60), and cases there cited.

We think also, that the court below ought to have charged the jury, that the estate was vested in the grantees in a deed executed by Rugh's administrators, in pursuance of the decree of the Court of Common Pleas. The first section of the Act of 31st of March 1792, expressly declares the decree shall have that effect. It is said the Court of Common Pleas had not jurisdiction because it was not a sale. But this is a misconception of the Act. The Act applies to every contract made on a valuable consideration, whether for money or otherwise: and this distinction is expressly recognised in *Haggerty's Case* (4 *Watts* 305), which was held to be out of the jurisdiction of the court on petition, because it was a case of a parol gift to a son, and not the case of a contract for a valuable consideration. The release of claims in the present instance was a valuable consideration for the settlement made on the grandchildren.

Judgment affirmed.