## Millingar *versus* Daly.

1. Land was struck down at auction and a deed tendered to the bidder, with a correct description of the land, "excepting from the premises hereinbefore described" a strip "appropriated by [a] coal company under judicial proceedings." There was no evidence that the exception was announced at the sale, or that the bidder knew of the appropriation. *Held*, that he had a right to refuse the property.

2. The refusal by a vendee to take property struck down to him is a waiver of a tender of a deed.

3. A bid may be made in words uttered aloud or spoken privately to the auctioneer, by writing in words or figures, by a wink or nod, or in any mode by which the bidder signifies his willingness and intention to give a particular price: Per Williams, A. J.

November 9th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county :* No. 99, to October and November Term 1867.

This was an action of assumpsit brought by Mary Ann Daly against James Millingar to recover damages for a breach of contract for the purchase of certain lots of ground in South Pittsburg. The suit was brought to November Term 1866.

The plaintiff's allegation was that the property out of which the dispute arose was struck down to the defendant at public auction at $6750, on the 28th of July 1866, the terms of payment being one-third cash and the balance in one and two years with interest, the purchaser to pay for one-half the stamps and conveyancing. The defendant having refused to take the property, it was sold again on the same terms to another purchaser for $5200.

On the day of the sale there was other property than that alleged to have been bought by the defendant put up for sale, one part of it being " an half stable lot."

The defendant alleged that the property was not fairly struck down to him, that the deed tendered was not stamped and did not include the stable lot which he claimed to have been put up with the other lots ; that there was a reservation in the deed of a strip of land which had been appropriated under judicial proceedings by a coal company and which was not reserved at the sale ; that there was a mortgage for $4000, payable in five years from the 8th of September 1864 with interest payable semi-annually, and a clause providing that the whole, principal and interest, might be collected, with attorney's fees and expenses, if the interest should be unpaid for sixty days after it became due.

The plaintiff gave evidence by the auctioneer that after the property had been cried for some time he stepped from his stand and told the defendant that the minimum price was $8000, and asked him to bid $7000 ; that the defendant took an envelope

[Millingar *v.* Daly.]

from his pocket and wrote on it $6750, and said that was his price, or that was the most he would give; that witness returned to his stand and commenced crying the lots at that sum, at which he afterwards struck them down to the defendant. She gave further evidence by one of her agents that whilst the property was crying at $6750 the defendant left the ground, and that just before leaving he said his bid was $6750, and that if knocked down he would take it at that price; it was struck off after he left. She gave in evidence also the tender of a deed, with evidence that the property described in it was that struck down to the defendant. The deed contained this reservation:—

" Excepting, however, from the premises hereinbefore described, a narrow strip of ground lying on the west side of the second and third pieces hereinbefore described, which was appropriated by the Pittsburg and Coal Hill Coal Company under proceedings in the Court of Common Pleas of Allegheny county."

There was no evidence that the bidders were informed, or that the defendant knew of the appropriation of the strip which was reserved in the deed.

The defendant gave in evidence the mortgage which was on the property as alleged by him, and other evidence bearing upon his several points of defence.

In rebuttal, the plaintiff gave evidence that before the crying of the sale was commenced, in answer to an inquiry of the defendant, Robb, one of her agents, told him of the mortgage and its terms, and said he could retain its amount from the purchase-money; also that after the sale, when asked by Mr. Robb about making out the deed, the plaintiff said, " You needn't trouble yourself about making out any deed, for I shan't take the property."

The court (Williams A. J.), amongst other things, charged:—

" The bid may be made in words, uttered aloud in the hearing of the bystanders, or spoken privately to the auctioneer; or by writing in words or figures; or it may be made by a wink or nod, or in any mode by which the bidder signifies his willingness and intention to give a particular sum or price for the property offered for sale.

" The first question, then, to be determined by the jury is, did the defendant purchase the property in controversy of the plaintiff, as alleged? Did he, at the public sale, bid the sum of $6750 therefor, and was the auctioneer authorized or justified in knocking it down to him upon his bid? This is a question of fact for the determination of the jury upon all the evidence in the cause.          *          *          *          *          *          *

" Whether the auctioneer was justified in knocking down the property to the defendant in his absence depends altogether upon the fact, whether the defendant intended to bid, and did actually

[Millingar *v.* Daly.]

bid, for the property; and whether, when he left the ground, he intended that the sum offered should be a standing bid, and that he would take the property if it should be knocked down to him on his bid."　　*　　*　　*　　*　　*　　*

* * * "It seems that whether he intended this as a valid and binding bid, depends upon the intention with which he made it, and the impression and understanding which he had when he left the ground. If, when he made the offer, he was told by the auctioneer, or some one of the plaintiff's agents, that the property would not be knocked down for a less sum than the minimum price demanded, and he understood it as a rejection of his offer, and with this impression left the ground, then the auctioneer had no right or authority to knock it down to him in his absence. It would be taking an undue advantage of him, under the circumstances, to knock down the property to him, in his absence, upon such an offer; because, if he had remained, he would have had the right to withdraw his bid at any time before the falling of the auctioneer's hammer.

* * * "The next question is, what was the property for which he bid? Did he bid for that mentioned and described in the deed subsequently tendered to him by the plaintiff, or did he bid for the half-acre, or 'stable-lot,' in addition to the property mentioned and described in the deed tendered by the plaintiff? If, when the defendant made the bid, he was under the impression and belief that the whole of the property, including 'the stable-lot,' was offered together, and he intended his bid for the whole of the property, then he would not be bound by it, if only that part of the property mentioned and described in the deed was actually offered for sale. What the understanding of the defendant was, is a question of fact for the jury. The bare allegation of the defendant, that such was his understanding when he made the bid, is not sufficient to justify the jury in finding the fact to be as alleged. But if, owing to any confusion, or indistinctness in describing the property actually offered for sale, some of the bystanders were under the impression and belief, from what they saw and heard, that the whole of the property was offered together, then the defendant, for the like reason, may have been under the same impression, and the jury might be justified in so finding. If the jury are satisfied that only the property mentioned in the deed was in point of fact intended to be offered by the auctioneer, and that no other property was actually offered by him, then the burden of proof is on the defendant to show that when he made the bid, he was under the impression that all the property, including 'the stable-lot,' was offered for sale, and that he bid with this understanding.

* * * "Then the defendant insists that the plaintiff is not

[Millingar *v.* Daly.]

entitled to maintain the action, because she has not tendered to him such a deed as he was bound to accept.

* * * "The question, whether the deed tendered by the plaintiff was such as the defendant was bound to accept, is perhaps immaterial under the evidence in this case. If the defendant absolutely refused to perform the contract, the plaintiff was not bound to tender a deed in order to maintain this action. When it was tendered the defendant did not object to it for want of a stamp. If he had objected to the deed for want of a stamp, the plaintiff might, and doubtless would, have had the proper stamp placed upon it. As he did not make the objection when the deed was tendered, he ought not to be permitted to make it now.

"But the defendant also objects to the deed on account of the exception or reservation therein. It does not appear to the court, and there is no evidence in the case showing that the deed does not embrace and convey the property actually offered for sale, and knocked down by the auctioneer to the defendant. On the contrary, Mr. McGowin, the surveyor, who made the plan of the lots, testifies expressly that the deed correctly describes the property offered for sale by the auctioneer and struck down by him to the defendant. His evidence is uncontradicted, and, therefore, the court decline to charge that the defendant was not bound to accept the deed on account of the reservation or exception. But whether this be so or not, is immaterial, if the jury believe the testimony of Mr. Robb as to the defendant's declarations when he called upon him a day or two after the sale. If the defendant told the plaintiff's agent that he need not prepare a deed, as he would not take the property, or have anything to do with it, the plaintiff was not bound to tender any deed before bringing suit, in order to maintain the action.

"The defendant further contends that he was not bound to accept the deed and perform the contract, because the property was encumbered by a mortgage held by the Dollar Savings Bank for the sum of $4000. * * * But if the jury believe that the defendant was so informed (of the mortgage) by the plaintiff's agent, Mr. Robb, and that he made no objection to the performance of his contract on account of the mortgage, when called upon by Mr. Robb in relation to the matter, or when the deed was tendered, he ought not to be permitted to make the objection now, but should be regarded as having waived it. If he had made the objection when called upon to perform his contract, the plaintiff might have procured a release or satisfaction of the mortgage by having it shifted upon other property, or by discharging it in some other way. And in any event, the deferred payment, amounting to a sum larger than the mortgage, would have been an ample security and protection against it."

[Millingar v. Daly.]

On the trial there were exceptions to evidence by the defendant which it is not important to notice.

There was a verdict for the plaintiff for $1000.

The defendant took a writ of error, and in a number of specifications, assigned the charge for error.

*M. W. Acheson*, for plaintiff in error, cited Chandler *v.* Glover, 8 Casey 511; Kyle *v.* Wells, 5 Harris 290; 1 Hilliard on Vendors 92; Powell *v.* Edmunds, 12 East 6; Gunnis *v.* Erhart, 1 H. Black. 289; Bradshaw *v.* Bennett, 5 Carr. & P. 48; 1 Sugden on Vendors 24; Stizell *v.* Kopp, 9 W. & S. 29; Speakman *v.* Forepaugh, 8 Wright 373; Dykes *v.* Blake, 8 Bing. N. C. 463; Cunningham *v.* Sharp, 11 Humphrey 116; Dalby *v.* Patten, 3 Sim. 29; Wheatly *v.* Slade, 4 Id. 126; 1 Greenl. Ev. § 115–20.

*J. Barton*, for defendant in error.

The opinion of the Court was delivered, January 7th 1868, by

AGNEW, J.—Except in a single particular, we discover no error in the manner in which this case was submitted to the jury, and the findings of the jury upon the questions of fact submitted relieves the case of many of the legal points raised in the course of the trial.

But we think the court erred in that portion of the charge which refers to the reservation contained in the deed. It may be, and undoubtedly is, true that the deed tendered to Millingar did correctly describe the property offered for sale by the auctioneer and knocked down to the defendant. But the effect of the reservation was to take the portion reserved out of the description, and to make the property sold that much less. It was then as if the description had in terms excluded the part reserved. If the fact stated in the reservation be true, then Millingar would get that much less than he bid for. The reservation reads thus: " Excepting, however, from *the premises hereinbefore described*, a narrow strip of ground lying on the west side of the second and third pieces hereinbefore described, which was appropriated by the Pittsburg and Coal Hill Coal Company under proceedings in the Court of Common Pleas of Allegheny county."

Now, while the refusal of Millingar to take the property testified to by Robb was a waiver of a tender of the deed by the plaintiff, clearly it was no waiver of his right to have the property he bid for. The testimony is clear that the auctioneer offered to sell the lots described in the deed, and also testified to by McGowin and that Millingar bid off that identical property. But there is no evidence that the bidders were informed or that Millingar knew that a portion of two of the lots had been appropriated by the coal company, and that his bid was made on this

[Millingar *v.* Daly.]

footing. He bid for the property as a whole, in the lump, as it is said, and was entitled therefore to the whole. His bid was a single gross sum, and the contract an entire one. The case, therefore, did not rest on the waiver of the tender, but upon the defect in the plaintiff's title to the property sold. But the deed was itself the evidence of this defect. The plaintiff proved the tender and produced the deed.

The exception in the deed states that this portion was appropriated by the coal company through legal proceedings. This was, therefore, a direct admission of the fact that the plaintiff had no title to the part appropriated, and indicated the measure of her ability to perform. The defendant had the right, then, to refuse to take the property struck off to him on the ground that to a part of it the plaintiff had no title, or that it was subject to such an easement in it on part of the coal company as diminished its value.

Judgment reversed, and a <em>venire de novo</em> awarded.