## Coolbaugh *v.* Ransberry, Appellant.

*Equity—Specific performance—Evidence—Notice.*

Where a vendee takes a conveyance of land through which the vendors had previously agreed to convey a right of way to a railroad company, and the overwhelming evidence is that the vendee had knowledge of this agreement, a court of equity will compel the vendee specifically to perform the agreement.

*Vendor and vendee—Executors and administrators—Agency.*

Where executors claiming to bind heirs agree to convey through land belonging to the estate, a right of way to a railroad company, and subsequently the same persons claiming to be attorneys in fact for the heirs, sell and convey the land to a person who has full knowledge that they are

attorneys in fact for the heirs, and also with the knowledge of the agreement with the railroad company, the purchaser of the land will be compelled in equity to convey the right of way to the railroad company.

Argued Jan. 19, 1903. Appeal, No. 24, Jan. T., 1903, by defendant, from decree of C. P. Monroe Co., May T., 1901, No. 15, on bill in equity in case of F. W. Coolbaugh et al., trading as the Delaware Valley Construction Company, v. Jesse Ransberry. Before BEAVER, SMITH, W. D. PORTER and MORRISON, JJ. Affirmed.

Bill in equity for specific performance.

CRAIG, P. J., found the facts to be as follows:

1. Catharine M. McIlheney, late of the borough of Stroudsburg, Monroe county, Pennsylvania, died on March 22, 1899, testate, and, in her last will and testament, nominated and appointed two of her daughters, Mary Ellen and S. Augusta McIlheney, executrixes of her will.

2. The said Catharine M. McIlheney, at and before the time of her decease, was seized of and in a certain farm, situate in the township of Smithfield, county of Monroe, and state of Pennsylvania, and bounded by the lands of George B. Brotzman, Weller & Fine, Jacob Kaul and John Marsh. This farm is known as the "Comstock farm," and contains 160 acres and 143 perches.

3. On August 13, 1900, the executrixes, above named, representing and claiming to bind all the heirs of said Catharine M. McIlheney, deceased, entered into a written agreement with the complainants, through their agent, T. A. Allen, agreeing to grant and convey to the said company, in fee simple and free from all incumbrances, a strip of land through the said farm, extending from the line of land of George B. Brotzman to the line of land of Charles Kaul, twenty feet on each side of the center line of the railroad, as now located, after the payment to them of the sum of $50.00, within four and one half months from the date of the said agreement. This agreement was not recorded.

4. Afterwards Mrs. Ellen Mudgett and S. Augusta McIlheney, claiming to be the attorneys in fact for the heirs of Catharine M. McIlheney, deceased, sold the said farm to Jesse Ransberry, of the borough of east Stroudsburg, county of

Monroe, and state of Pennsylvania, the defendant, and executed a deed in fee simple therefor to him, dated September 15, 1900, which deed is recorded in the office for recording of deeds, at Stroudsburg, in and for the county of Monroe, in deed book, vol. 53, p. 320, etc. This deed had a stipulation or reservation in it that the defendant was not to have possession of the land conveyed until April 1, 1901.

The deed above referred to although dated September 15, 1900, was not executed and delivered to the defendant, nor the consideration therefor paid, until on or about September 25, 1900,—ten days or two weeks after its date. This last named deed was the fulfilment or consummation of the agreement in writing between Mrs. Ellen Mudgett and S. Augusta McIlheney, attorneys in fact for the heirs of Catharine M. McIlheney, and the defendant, dated September 15, 1900, providing for the sale and conveyance of the same land and premises described in the deed. This agreement was not recorded. It provides that on the payment by the defendant of $3,300, a full and satisfactory deed will be delivered, on or before September 25, 1900, and possession thereof given, on or before April 1, 1901.

5. From the preponderance of the evidence, we find that the defendant had notice of the original contract for the sale of the land and premises mentioned and described in the bill, between the executrixes of Catharine M. McIlheney, deceased, and the Delaware Valley Construction Company, dated August 13, 1900, both at the time of the making of the agreement between himself and Mrs. Ellen Mudgett and S. Augusta McIlheney, attorneys in fact for the heirs of Catharine M. McIlheney, on September 15, 1900, and on or about September 25, 1900, when he received the delivery of the deed in pursuance of the last mentioned agreement, and when the full consideration thereof was paid.

That the notice above referred to was given to the defendant before the delivery of the deed and the payment of the consideration therefor, appears plainly and convincingly from testimony of Harvey Huffman and W. B. Eilenberger, whose firm, as attorneys, represented the McIlheney heirs, and John Springer, their stenographer and typewriter. And, as we read the testimony of the defendant himself, he was aware of the option or agreement of August 13, 1900, between the

executrixes of Catharine M. McIlheney and the plaintiffs.
This appears, according to our judgment, on pages 40, 41, 42,
43, 45, 46, 47, 49, 50, 51 and 52 of his testimony.   On page
43, this question is put to the defendant: " Did Mr. Huffman
call your attention to any option at the time of the execution
of this written agreement?" and he answered: " That was
the first time it was brought up.   That was the time I told
him.   I asked him about it."   Again, on page 52 of the de-
fendant's testimony, the following occurs: " Q.   You knew
that I understood there was an agreement?   A.   Yes, sir.
Q.   When did I tell you that?   A.   I think you told me that
the same day we signed the agreement."

Referring now to the answer of the defendant, at pages 4
and 5, we find that he had full knowledge of the survey loca-
tion of the route of the plaintiff's railroad at the time he was
negotiating for the McIlheney or Comstock farm.   This is his
statement: " That pending the negotiations leading up to my
purchase of said farm, I call the attention of the above-named
Harvey Huffman, Esq., representing the owners of said farm,
to the survey location across the premises of a railroad route
by the Delaware Railroad Company, stating it as my deter-
mination not to deal for the property at the risk of having to
meet the annoyances of the construction and operation of a
railway upon it. . . . Afterwards, to wit: on September 15
last, I met the above-named representatives of the owners of
the premises, for the purpose of perfecting title to me, at which
time the subject of the projected railroad route over the prop-
erty was again discussed between the said Harvey Huffman
and myself, in its relation to my objection to dealing for the
property at all on the chances of having the said railway com-
pany occupy its surveyed line of ro   ," etc.

This knowledge the defendant   repeated in his testimony,
at page 41.   He says: " Q.   What   versation, if any, between
Mr. Huffman and yourself about the railroad survey, or any
option?   A.   I called his attention to it and asked him what
about that survey.   I understood that they had options on a
good many places, and I told him that I would not want to buy
a farm and have a railroad go through it, and be annoyed with
it all the time, and he led me to believe, or told me, that I need
not worry about that as he was on the inside and knew that

there would be no railroad built there now, unless they got some other people in it." At page 51 of the testimony of the defendant he says: " Q. Didn't I tell you there was an agreement on the land? A. You understood there was an agreement, yes, sir." And on page 52 he says: " Q. When did I tell you that? A. I think you told me that the same day we signed the agreement." Also at page 49 he testified as follows: " Q. You had been on the farm? A. Yes, sir, lots of times. Q. You had seen the width of the embankment made there? A. Yes, sir. Q. You had to cross it to get to the farm proper? A. Yes, sir. Q. Many times? A. Not so many. Q. You had been up and down the embankment? A. Yes, sir. Q. The grading was done? A. The top of the survey is only about eight or ten feet wide."

At the argument it was stated by defendant's counsel that the embankment had been made a long time before by another party, but whether this is so we cannot tell, as the evidence does not bring this out. If the embankment had been built, in pursuance of a survey and proper location by the plaintiffs, it would be a very material circumstance. However, the survey location, to which the defendant testified, was made by the plaintiffs, and therefore we make our finding irrespective of the embankment referred to, and only take into consideration the survey location made by the plaintiffs. This survey location, the defendant admits, on page 4 of his answer, was known to him at the time of the negotiations. And the agreement of August 13, 1900, gives the plaintiffs the right of possession to survey, lay out and prepare their railroad for construction purposes.

Hence, we are brought to the finding that, at the time of the negotiations for the McIlheney or Comstock farm, the defendant had full notice of the existence of an agreement or option, between the McIlheney heirs and the plaintiffs for the right of way described in the bill.

6. That Harvey Huffman, Esq., of the firm of Eilenberger & Huffman, in behalf of the complainants, either on December 27 or 28, 1900, tendered to the defendant the sum of $50.00 in legal tender of the United States of America, and demanded of the defendant a deed to the complainants, and that the defendant refused to accept the said $50.00 and refused to exe-

102     COOLBAUGH *v.* RANSBERRY, Appellant.

Statement of Facts—Opinion of the Court. [23 Pa. Superior Ct.

cute the deed as demanded, and still declines to accept the said sum, and refuses to execute a deed as provided in the said agreement. The $50.00 tendered has been paid in court, and the prothonotary holds that amount for the use of the defendant.

7. The defendant is still owner of the farm referred to in the bill.

8. According to the facts as we have found them, the complainants are without an adequate remedy at law.

The court entered a decree for specific performance.

*Error assigned* was the decree of the court.

*A. Raiguel Brittain* and *Henry J. Kotz*, for appellant.

*Harvey Huffman*, of *Eilenberger & Huffman*, with him *Shull & Shull*, for appellees.

OPINION BY BEAVER, J., May 22, 1903:

There is little in this case requiring discussion. The plain-tiffs filed their bill, asking for a decree to compel the defendant to convey the title to a strip of land through his farm which the parties, through whom he claimed title, had agreed to convey prior to his purchase, of which agreement he had actual notice, the agreement being based upon a consideration of $50.00 to be paid prior to a certain date. On or before that date, it was alleged that the amount of the consideration was tendered him in gold and, upon his refusal to accept the tender, the amount was deposited with the prothonotary for his benefit.

An answer was filed, containing a somewhat qualified denial of the notice but displaying in the answer, taken as a whole, the fact that the defendant had notice of the option or agreement to convey the right of way through the farm before his purchase, but that he relied upon the representations of the attorneys of his grantors as to the improbability of the railroad being completed through his farm. There was no specific denial in the bill of the authority of those who joined in the agreement for the right of way to execute it.

Testimony was taken and the court below, after the hearing, found all the essential facts in favor of the plaintiffs and de-

creed the conveyance. The appeal is from that decree and the specifications of error deal with alleged errors of the court in its findings of fact.

We have carefully read all the testimony in the case.

1. As to the defendant's knowledge of the agreement or option to convey the right of way through the property, there can be no serious question. Upon the defendant's own testimony, he had such notice, not only from the grading which had been done through the property but from the attorneys of his grantors. He attempts to explain both forms of notice but the explanation is at best lame and is a direct contradiction of two and, in some parts of his testimony, of three disinterested witnesses. It is not necessary to rely upon the rule that the findings of the court below in proceedings in equity will not be disturbed, unless for lack of evidence upon which to base them, or of clear perversion of the testimony. We cannot see how the court could have found the fact as to notice in any other way than it was found.

2. As to the authority of the executrices. (*a*) It is asserted in the third paragraph of the bill and is not specifically denied in the answer. (*b*) It is apparent from the testimony that the executrices were also attorneys in fact for all the heirs, of which the defendant had notice, their agreement with him as such being subsequently ratified by a deed in which all the heirs joined. If they had the power to bind the heirs, the designation which they attach to their signatures is comparatively unimportant. (*c*) The question does not seem to have been raised in the court below, until after the testimony was closed, during the argument. The will not being in evidence and no testimony having been given upon the subject, we fail to see how the defendant could raise the question at that time in such a way as to convict the court of error in its findings upon the subject, particularly in view of the fact that the plaintiffs had entered into possession of the premises, without any protest or interference on the part of the heirs claimed to be represented in the agreement.

3. As to the remedy. The specific prayer was for a conveyance by the defendant to the plaintiffs. Equity was undoubtedly the only remedy through which this form of relief could be secured. No action at law could have secured its equivalent.

4. The evidence in regard to the fact of tender was sufficient to justify the finding of the court that it was in time and that the amount remained in the hands of the prothonotary for the use and benefit of the defendant. The decree, in terms, allows the defendant, upon a compliance with the order, to take the amount from the prothonotary.

There seems to be nothing more in the case requiring comment. The assignments of error are all overruled. The decree is affirmed.