# Markley v. Godfrey, Appellant.

*Real estate—Contracts—Option to purchase—Exercise of option —Waiver—Case for jury.*

Defendant sold to plaintiff on September 23, 1911, a house and an adjoining lot, both being subject to a mortgage given by the defendant, and on the same day entered into an agreement with the plaintiff under seal in which defendant agreed to repurchase the lot at an agreed price, "At the expiration of one year from the date hereof," at the option of the plaintiff. On July 12, 1912, plaintiff wrote defendant the following letter: "I will therefore give you notice that I will revert or resell this lot as per agreement to you at the stipulated figure $2,500 as per agreement. I will give it into your hands for convenience' sake from this date." There was no reply by defendant. On September 23, 1912, plaintiff went to see defendant at his place of business but did not find him, and called daily thereafter without meeting him until September 28, when he met him and tendered a deed for the lot, executed several

days after September 23d. Thereafter plaintiff again wrote defendant offering conveyance of the lot, and then commenced an action of assumpsit for the agreed purchase-price. *Held,* (1) plaintiff's letter of July 12th was a proper exercise of the option; (2) that exercise of the option was not waived by the subsequent conduct of the plaintiff, and a verdict for the plaintiff was sustained, for the purchase-price with interest from the date of the commencement of suit.

Argued May 2, 1916. Appeal, No. 85, Jan. T., 1915, by defendant, from judgment of C. P. Berks Co., Sept. T., 1913, No. 39, on verdict for plaintiff in case of Benjamin H. Markley v. Hamilton Godfrey. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for breach of contract to purchase real estate.

The facts appear in the following opinion by ENDLICH, P. J.:

The defendant, on Sept. 23, 1911, sold to the plaintiff house and lot No. 232 Clymer street, together with the adjoining lot, both being subject to a mortgage given by defendant for $5,000. On the same day, the parties executed an instrument under seal, in which, in consideration of said purchase and the payment by defendant to plaintiff of $1, the defendant agreed "to repurchase, at the option of the said (plaintiff), at the expiration of one year from the date hereof, for the sum of $2,500, the lot of ground adjoining......232 Clymer street." On July 12, 1912, plaintiff wrote to defendant (and the latter received) a letter, in which, after referring to the lot and to the agreement as expiring Sept. 23, 1912, plaintiff said:

"I will therefore give you notice that I will revert or resell this lot as per agreement to you at the stipulated figure $2,500 as per agreement.

"I will give it into your hands for convenience' sake from this date."

There was no reply by defendant. On Sept. 23, 1912, plaintiff went to see defendant at his place of business, but did not find him. On September 24th and 25th plaintiff was out of town on business. On the evening of the latter day he telephoned to defendant asking when he could meet him, defendant answering that he was at his place of business every day until 6 o'clock. On September 26th, plaintiff called there and waited for two hours without seeing defendant, thereupon leaving a note for him that he, plaintiff, would call in the morning. He did so on September 27th and waited four hours, defendant not appearing. On September 28th, plaintiff met defendant and tendered him a deed for the lot, which, whilst dated and acknowledged as of Sept. 23, 1912, was not, in fact, executed until several days thereafter. Defendant, without accepting the deed or assigning any reason for not accepting it, told plaintiff he would let him know in a few days what he was going to do. No word coming from him, and the $5,000 mortgage being cancelled on Oct. 21, 1912, plaintiff on that date wrote to defendant, again offering conveyance of the lot, repeating his desire that defendant buy it and make payment according to the agreement, and requesting to be informed what defendant intended to do in the matter. That letter also remained unnoticed. Plaintiff, after waiting until Aug. 23, 1913, then brought this suit in assumpsit. At the trial the only controverted questions of fact were as to an alleged waiver by plaintiff of his notice of July 12, 1912, and as to an alleged abandonment by both parties of the agreement of Sept. 23, 1911. The cause was accordingly submitted to the jury on that issue. The verdict, negativing it, was for plaintiff of $2,500 and interest from Sept. 28, 1912, conditioned upon plaintiff's conveyance of the lot, free of encumbrances, to defendant.

The position of the defendant at the trial was (inter alia) and now is that a recovery by plaintiff is forbidden

because he did not live up to what was incumbent upon him under the agreement on which he relies. The substance of the argument, briefly stated, is that the agreement gave plaintiff an option to call upon defendant to take back and pay $2,500 for the lot, in the exercise of which option so as to bind defendant plaintiff was obliged strictly to observe all the terms indicated: see McMillan v. Philadelphia Co., 159 Pa. 142; Swank v. Fretts, 209 Pa. 625; Barnes v. Rea (No. 2), 219 Pa. 287; Barton v. Thaw, 246 Pa. 348; Potts v. Whitehead, 23 N. J. Eq. 512, 514; Eggleston v. Wagner, 10 N. W. Repr. 37, 42 —that the plaintiff's option was to be exercised "at the expiration of one year from" Sept. 23, 1911, and involved a tender at that time to defendant of a conveyance of the lot freed from the lien of the $5,000 mortgage,— that the notice given by plaintiff to defendant on July 12, 1912, was not a compliance with the terms of the option as to time, besides being of uncertain meaning and in its last clause introducing something not contemplated by the agreement, viz, an immediate taking over of the lot by defendant, with a resulting liability for interest on the price: see Fasholt v. Reed, 16 S. & R. 266, 268; Hershey's Est., 213 Pa. 601—and that plaintiff's nonreadiness to pass an unencumbered title to defendant on Sept. 23, 1912, and his failure to tender any conveyance until Sept. 28, 1912, effectually disposed of the option he had under the agreement.

The label which the parties themselves have put upon their contract is not conclusive upon the court: Brunswick & Balke Co. v. Hoover, 95 Pa. 508, 513, and their punctuation is not of much weight: White v. Smith, 33 Pa. 186, 188; Abbott's Est., 198 Pa. 493, 496. But without relying upon either of these matters as aids to the understanding of the agreement of Sept. 23, 1911, it seems clear enough that it was intended and effective to give plaintiff a right, answering every definition of an option, (irrevocable by defendant because supported by a con-

sideration implied by the seals as well as expressed,) of calling upon defendant to buy back the lot adjoining 232 Clymer street at the price of $2,500, and in the event of plaintiff's exercising that right or option in accordance with the terms of the agreement, to require defendant to buy the lot back at that price—that right to be exercised and that duty to be performed "at the expiration of one year from" Sept. 23, 1911.  In every contract under which the remedies are not mutual the time fixed is to be regarded as material: Westerman v. Means, 12 Pa. 97, and so it is in an option: Swank v. Fretts, 209 Pa. 625, which is an unilateral understanding: ibid.; Barton v. Thaw, 246 Pa. 348.  It is not necessary to review the numerous and conflicting decisions dealing with the phrase "at the expiration of"—some holding that it limits a time ending with the period fixed, so that the thing contemplated cannot be done or required thereafter—others, that it indicates a period to elapse before a liability is to arise or a right to be exercised—and still others, that it demands action on the very day when the period expires, neither before nor after.  Giving it for present purposes the meaning which is the most favorable possible one to defendant, it imports that plaintiff's election to exercise his right under the agreement must be made, and defendant's resulting liability could only arise, on Sept. 23, 1912, and that a default on plaintiff's part to make an adequate election on that particular day terminated both the right and the liability.  As to any earlier notice to defendant of plaintiff's purpose, it is to be observed that the agreement calls for none, and that therefore none was required: Smith & Fleck's App., 69 Pa. 474, 480.  There must, indeed, have been notice by plaintiff to defendant of his election to exercise his right: McMillan v. Philadelphia Co., 159 Pa. 142, and that must, under the construction indicated, have been notice on Sept. 23, 1912,—the inexorable rule being that "no amount of hardship, or im-

possibility, or illegality will avoid the bar of a condition precedent unperformed": Allegheny v. Millville, Etna & Sharpsburg St. Ry. Co., 159 Pa. 411, 419. Yet it is difficult to perceive any reason, either in equity and common sense, or upon a strict literal interpretation of the language in question, for denying to a positive declaration made by plaintiff to defendant at any time during the running of the year that he, plaintiff, elected to insist, on Sept. 23, 1912, on defendant's repurchasing the lot, the effect of a valid exercise, with respect to the time mentioned in the agreement, of the right conferred on him by it, provided the determination continued unchanged, its expression unrelinquished and the agreement itself unabandoned on that day. It has often been held (see, e. g., the recent case of Fidelity & Casualty Co. v. Harden, 212 Pa. 96,) that an oral agreement made prior to the execution of a written contract, touching its subject-matter and operating down to and at the very moment of its consummation, may be shown as contemporaneous with it, to control or qualify it. Why then should not plaintiff's letter of July 12, 1912, be treated as the exercise of his right or option under the agreement? Awkwardly worded, perhaps, its sense is nevertheless plain and unmistakable. It refers to the agreement as its basis and interpreter. In the light of the same, it is a distinct and unequivocal declaration that plaintiff elects to hold defendant to his promise to repurchase, that election to be effective on Sept. 23, 1912. If, as in the absence (established by the verdict) of any inconsistent act or conduct in the interval is to be presumed, the intention to persist in the election thus declared continued, and the declaration of it held good, throughout, and down to and at the expiration of, the period allowed for making the election, every formal as well as substantial requirement of the agreement in this particular was satisfied. Remaining, unretracted and unqualified, in the defendant's hands on Sept. 23,

1912, it on that very day declared to him the plaintiff's election to exercise his right or option under the agreement, and in so far as its effect depended upon the time fixed therein, bound defendant as an election then made or reiterated. Nor is the addition, "I will give it into your hands," etc., the importation into the transaction of something foreign to the agreement, extending, restricting or otherwise modifying it, and therefore, under the doctrine of the civil law: see Schuster, Princ. Germ. Civ. Law, p. 98, and in accord with several of the decisions first above cited, under our law also, depriving an election thus varying from the terms of the option of its efficacy as such. The addition referred to was but an expression of willingness, a gratuitous offer on plaintiff's part, to do something which might in defendant's judgment serve his convenience. If not acceptable to him, it was brutum fulmen, and upon the principle Utile per inutile non vitiatur to be disregarded.

Neither, as an election on Sept. 23, 1912, was what plaintiff did incomplete because of his omission to do anything required of him by the agreement in order to make it effectual, even under the principle that what is implied in a contract is as much a part of it as what is expressed: Slegel v. Lauer, et al., 148 Pa. 236, 244; Waslee v. Rossman, 231 Pa. 219, 227. Not in express terms and not by implication does the agreement call for anything more from plaintiff than due notice of his election to exercise his right or option under it. It does not speak of, much less call for, a reconveyance of the lot on Sept. 23, 1912. If it did, there might be implied a duty on plaintiff's part to tender on that day a deed transferring the title to defendant, (Vankirk v. Patterson, 201 Pa. 90,) which, however, even then, as intimated in Corson v. Mulvany, 49 Pa. 88, 99, would not itself be the election, or any part of it, but simply a consequence of it. What the agreement speaks of, gives the plaintiff a right to and makes obligatory upon defendant at plaintiff's elec-

tion is a "repurchase" of the lot, which does not necessarily involve an immediate conveyance—which may be in any form answering the demands of the statute and satisfactory to the parties—and into an all-sufficient contract for which the agreement itself is converted by plaintiff's election under it, as appears by various decisions including the very recent one in Barton v. Thaw, 246 Pa. 348, 357. Consistent with the nonrequirement of a tender of conveyance on Sept. 23, 1912, and correspondingly inconsistent with the idea that such tender was an indispensable element in plaintiff's election, is the further circumstance that the agreement, whilst fixing the price at which the lot was to be repurchased, has nothing to say about the time or mode of its payment. No doubt it must be understood that the "repurchase" was to be followed by a formal conveyance and thereupon by payment of the price fixed. But there is nothing to justify a holding that either of these things had to be done on Sept. 23, 1912. On the contrary the principle in point seems to be that, where the time for doing something under a contract is not determined by it, the law declares that it is to be done in a reasonable time: Dayton v. Cunnison, 9 Pa. 347, 348; Smith & Fleck's App., 69 Pa. 474, 481—which, there being no dispute as to the facts, is for the court: Lancaster Bank v. Woodward, 18 Pa. 357, 362; Barbour v. Fullerton, 36 Pa. 105, 107; Leaming v. Wise, 73 Pa. 173, 176; Swan, Assignee, v. Watertown Fire Ins. Co., 96 Pa. 37, 43; Patterson, et al., v. Graham, et al., 164 Pa. 234, 241. It may be added that there is nothing new in the distinction between time annexed to the exercise of an option and of the essence of it, and time with respect to the performance of the contract created by the due exercise of the option and not material. The distinction is plainly made in Smith & Fleck's App., 69 Pa. 474, 481, and as plainly obtains here.

We have, then, in this case an option turned, on Sept.

23, 1912, by plaintiff's election to exercise it, into a mutually binding contract whereby defendant repurchases from plaintiff the lot adjoining 232 Clymer street at the price of $2,500 to be paid by defendant to plaintiff in a reasonable time after the date mentioned upon conveyance of the lot by plaintiff to defendant; on plaintiff's part a conveyance tendered and reoffered, and on defendant's part a nonacceptance of it and the withholding of payment for a period exceeding any requirements to enable him to meet his undertaking. That such a contract, there being no apparent change of conditions: see Remington v. Irwin, 14 Pa. 143, 145; Tiernan v. Roland, 15 Pa. 429; Sylvester v. Born, 132 Pa. 467, 470, and plaintiff continuing willing and ready to convey: Smith & Fleck's App., 69 Pa. 474, 481, is susceptible of specific enforcement in equity, needs no demonstration. The action of assumpsit is virtually a bill in equity: Martzell v. Stauffer, 3 P. & W. 398, 402; Hindmarch v. Hoffman, 127 Pa. 284, 288; Brown v. German-American Title & Trust Co., 174 Pa. 443, 447, and brought for that purpose. Of course equity would not compel defendant to pay without a conveyance to him; and hence the verdict against him in this action is so conditioned. The equitable character of the proceeding, however, draws after it still other consequences. With full knowledge of the existence of the $5,000 mortgage covering the lot in question, the parties, in the agreement of Sept. 23, 1911, said nothing about it. Under the doctrine of Cadwalader v. Tryon, 37 Pa. 318, 232, and Wilson's App., 109 Pa. 606, 609, a covenant for the removal of that encumbrance by Sept. 23, 1912, or at any time, cannot be written into the agreement as a condition of the repurchase provided for by it. Nevertheless, when it comes to payment the principle that specific performance will not be decreed where the result would be hardship, surprise, etc.: Graham v. Pancoast, 30 Pa. 89, 97; Wistar's App., 80 Pa. 484, 495; Lynch's App., 97 Pa.

349, 353; Rennyson v. Rozell, 106 Pa. 407, 412; Friend v. Lamb, 152 Pa. 529, 533, would seem to indicate that equity would not, and that therefore this action cannot be used to, compel defendant to pay $2,500 for a conveyance of the lot subject to that lien. In accord with the teaching of Tiernan, et al., v. Roland & Blackstone, 15 Pa. 429, 441; Sellers. v. Licht, 21 Pa. 98, and other decisions, however, this, being a remediable difficulty, did not destroy the obligation of the agreement of Sept. 23, 1911, or the contract created on Sept. 23, 1912, by plaintiff's exercise of his election. Moreover, admittedly, it has in fact been remedied by the cancellation of the mortgage. And hence the rule governs that in equity the decree, and consequently in an equitable action at law the verdict, are determined by the situation at the time of their entry: Shaw, et al., v. Bayard, et al., 4 Pa. 257, 258-9.

It seems needless to point out more specifically and in detail how and with what effect all this applies to the several propositions making up defendant's contention and to the rules here for disposition. The evidence contains nothing to suggest that on Sept. 23, 1912, defendant was ready or willing to carry out his undertaking upon any sort of demand that might have been made upon him by plaintiff, had he been successful in finding defendant when he sought him on that day. Defendant's subsequent conduct can only be looked upon as a refusal on his part. In these circumstances the defense interposed by him is a purely and highly technical one. It is not to be denied that he has the right to set up a technical defense. But even as such what he has set up does not seem to meet the case technically considered, not to mention its equities. Indeed, if the controlling principles and their bearing have been correctly apprehended, it would appear to follow that there is no escape from a conclusion holding defendant to his bargain in substantial accord with the verdict, except in one particular, in which it may be readily corrected. Not without

having in view a possible need for such correction, the charge instructed the jury, in the event of their finding for plaintiff, to allow interest against the defendant from Sept. 28, 1912, the date of the tender of a conveyance. The lot being at that time subject to the lien of the $5,000 mortgage, defendant was not obliged to make payment on that day. The letter of Oct. 21, 1912, at which date the mortgage was cancelled, was not a categorical demand for immediate payment. Its tenor did not exclude the inference of plaintiff's assent to some further delay. The fact that he did not at once follow it up with legal proceedings strengthens that understanding of it and of his attitude. The institution of this suit, on the other hand, was a definitive demand by plaintiff for payment: Swearingen v. Sewickley Dairy Co., 198 Pa. 68, 71. It is but fair to both parties to treat it as marking the point of time up to which plaintiff may and beyond which he cannot be supposed to have been willing to indulge the defendant, and hence from which interest on the payment withheld by defendant should properly be allowed. This means a reduction of the amount of the verdict by $137.50.

And now, Feb. 1, 1915, the rule for judgment n. o. v. is discharged; and the rule for a new trial is discharged on condition that plaintiff, within 10 days from this date, remit upon the record of this suit so much of the verdict heretofore rendered therein as exceeds the sum of $2,662.50, with interest thereon from the date of its rendition,—otherwise said rule for a new trial to be made absolute.

The lower court dismissed defendant's motion for judgment n. o. v. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*Cyrus G. Derr,* with him *Oliver M. Wolff,* for appellant.

*Charles H. Tyson,* for appellee.


PER CURIAM, May 15, 1916:

The judgment is affirmed on the opinion of the learned president judge of the court below discharging the rule for judgment non obstante veredicto.