## Hirst et al. v. Freeman et al.

*Auctioneers—Sale of real estate subject to lessee's option to buy—Hand-money.*

1. When real estate is sold at public sale, subject to a lease containing an option to the lessee to buy the property at the price bid within a specified time, the bid is merely an offer which is automatically rejected when the lessee signifies his intent to buy at the price bid within the time specified, and, thereupon, it becomes the duty of the auctioneer to return the entire hand-money to the bidder and seek compensation from the vendor who engaged him.

2. The fact that the lessee subsequently failed to buy the property does not affect the bidder's right to a return of the hand-money; his election to buy released the bidder.

Motion for judgment for want of a sufficient affidavit of defence. C. P. No. 2, Phila. Co., June Term, 1921, No. 6679.

*William T. Brennan* and *Daniel C. Donoghue,* for plaintiffs.

*Allen S. Olmsted, 2nd,* and *Saul, Ewing, Remick & Saul,* for defendants.

BARRATT, P. J., June 5, 1922.—At a public sale of real estate the plaintiffs' decedent made a bid of $110,000 for the property, which was accepted by the

Hirst et al. *v.* Freeman et al.

defendants, auctioneers employed to make the sale by the owners. $5000 was paid as down-money, and the usual auctioneers' receipt given. At the time of the sale the premises were occupied by the Society of the American Red Cross, which held under a two-year lease. The lease contained this option to the tenant to purchase the property, viz.: "Should the lessor have a proposal for the purchase of the property, the lessor agrees to give the lessee the first opportunity to buy the same, subject to the understanding that if notice is served upon the lessee to that effect it is to decide within one week as to whether or not it will purchase the demised premises."

The sale was advertised by the auctioneers as being "subject to a lease expiring upon three months' written notice on September 11, 1921. The lease gives the lessee the right to purchase the property within seven days after sale. The lease also contains a clause requiring that possession of the property be given within four months upon the sale thereof. Sale subject to the approval of the Orphans' Court." After the sale the attorney for the estate which owned the property notified the bidder that the lessee had elected to purchase under the option in the lease. The bidder thereupon increased his offer to $117,500, which offer was not accepted. The lessee has failed to buy the property and the bidder is not now disposed to consummate the purchase. This suit is brought to recover the $5000 paid to the auctioneer at the sale.

The defendants in their affidavit of defence urge that a binding contract for the sale was made at the time the property was struck down to the plaintiffs' decedent, and that the plaintiffs are under the duty to consummate the sale, and, therefore, not entitled to the return of the money paid on account. The plaintiffs seek judgment for want of a sufficient affidavit of defence and obtained this rule.

If the plaintiffs are obligated under the terms of the sale to purchase the real estate at the price bid, regardless of the election by the lessee to take under the option, then the affidavit of defence is sufficient. But if the bid at the public sale amounted only to an offer, which was automatically rejected by the exercise of the option, then the affidavit is insufficient, for it merely insists that the plaintiff carry out a contract which, in fact, was never completed.

The question is whether at a public sale of real estate, subject to a lease containing an option to the lessee, the bidder obligates himself to purchase a title which may be divested by the exercise of the option, or whether his bid is merely an offer which is automatically rejected when the lessee signifies his intention to buy at the price bid.

At an auction sale the striking of the property to the highest bidder is an acceptance of the bidder's offer, and the contract is completed on the terms announced by the auctioneer. The contract for the sale of the real estate in this case became binding upon both parties with that act, and neither could refuse to carry out its provisions except by mutual consent. The seller contracted to sell his entire interest in the property, that is, the full title, on condition, however, that the lessee might purchase the same within seven days, and the bidder, having knowledge of the condition, contracted to take.

Defendants' contention is, the purchaser of an equitable title (including one held by a vendee under articles of agreement), of a title inchoate or defective on its face, takes subject to all the countervailing equities to which it was subject in the hands of the person from whom he purchases: Kramer *v.* Arthurs, 7 Pa. 165; Reed *v.* Dickey, 2 Watts, 459; La Belle Coke Co. *v.* Smith, 221 Pa. 642. One who purchases land with notice that the title is defective takes

1 D. & C.

the whole risk on himself: Walker *v.* Quigg, 6 Watts, 87. It is admitted that the bidder had knowledge of the outstanding encumbrance, and according to the analogy in the case of Coolbaugh *v.* Ransberry, 23 Pa. Superior Ct. 97, equity would specifically enforce the contract entered into between the lessor and lessee, and to which the bidder would become a party by taking the title of the lessor. In Coolbaugh *v.* Ransberry, a vendee took a conveyance of land through which the vendor had previously agreed to give a right of way to a railroad company. The vendee had knowledge of this agreement, although it was not mentioned in his deed, and equity compelled specific performance of the agreement with the railroad company. The option in the present lease was in the nature of a continuous offer to sell, and, when accepted, became a complete contract of sale: Kerr *v.* Day, 14 Pa. 112; Napier *v.* Darlington, 70 Pa. 64. A vendee who takes title to land with the knowledge that his grantor has agreed to sell it to another person, takes it subject to the equitable estate vested in the said vendee: Smith *v.* Gibson, 1 Yeates, 291; Riel *v.* Gannon, 161 Pa. 289; Dillinger *v.* Ogden, 244 Pa. 20. The same is true where a grantee, with notice of a prior option, which has not expired, takes subject to the right of the person holding the option to compel specific performance: Hamory *v.* Sargent, 25 Pa. C. C. Reps. 191. In the present case the bidder had knowledge of the option, and the lessee had the absolute right to make the contract binding within the time specified.

It is clear that the defendants admit that at the sale the bidder offered to buy the title of the owner, *i. e.*, a good legal title, but one which might be taken by the lessee within seven days after the sale. He became entitled to the whole of the property he bid for, and he was under no obligation to accept less: Millingar *v.* Daly, 56 Pa. 245. The defendants argue that the plaintiffs made their bid knowing that they took the chance of having to sell to the lessee, and that they cannot now complain that the lessee has defeated their title to the property. It is immaterial whether the lessee actually consummated the sale under the option, for the rights of the seller and the bidder were established at the moment the property was struck down. The bidder could insist on a conveyance to him, and he, in turn, could not refuse to sell to the lessee under the terms of the option.

Such is the position of the defendants, but, after all, this is merely the written contract for the sale of land and is to be construed with a view to the entire agreement: Meanor *v.* McKowan, 4 W. & S. 302; Brown *v.* Decker, 142 Pa. 640. The entire contract is evidenced by the advertisement of the auctioneers and the receipt, and there is no doubt that the purchaser knew that the same was made subject to the right of the lessee to exercise the option within seven days. But if we should follow the theory of the defendants, great hardship would result to the plaintiffs, and it would be supporting an interpretation which is not warranted by the apparent intention of the parties. Where a strict construction would work a great injustice, a contract may be interpreted by its spirit and meaning: Bickford *v.* Cooper, 41 Pa. 142. It must be construed with reference to the circumstances under which the parties contracted: Perry *v.* Payne, 217 Pa. 252. Hence, the motive or object of the agreement may be considered in arriving at the intention of the parties: Dixon-Woods Co. *v.* Glass Co., 169 Pa. 167.

The facts in this case are not disputed and, therefore, the construction and effect of the written contract must be left to the court: Camden Wood Turning Co. *v.* Malcolm, 190 Pa. 62; Erie Forge Co. *v.* Iron Works Co., 22 Pa. Superior Ct. 550; Duffield *v.* Hue, 129 Pa. 94. This contract is not within the class

Hirst et al. *v.* Freeman et al.

of the usual auction sales, nor is the option contained in the lease similar to an ordinary form of option given to a lessee. The chief difference is in the fact that the option was dependent upon the proposal to buy by another person, and the bid was made by the plaintiffs' decedent with the knowledge that he was establishing a price at which the lessee could buy almost immediately, and, therefore, he could gain nothing.

It is not to be supposed that a reasonable person would obligate himself to pay $110,000 when he would get nothing in return; he would hardly take the risk of paying that amount merely on the chance that the lessee would not buy under his option. The natural construction of the contract would be that neither party contemplated an absolute transfer of the property, unless the lessee did not exercise his option within the seven days. It was in the nature of a sale contingent upon the happening of a certain event within seven days, and when that event happened, the purposes of both parties were accomplished. The bidder had made his *bona fide* offer, which established the price at which the lessee could buy, and he had risked his $5000 on the chance that the lessee would not exercise the option. The seller was in the position of having made his offer to sell to the lessee at $110,000, which offer remained open for seven days. It is immaterial that the lessee did not complete the purchase, for the election itself released the bidder, and the owner and the lessee were both in position to enforce the contract between them: Kerr *v.* Day, 14 Pa. 112; Napier *v.* Darlington, 70 Pa. 64.

This understanding of the parties is borne out by their action after the sale. The plaintiff's decedent was notified that the lessee had exercised its option, and the plaintiffs' decedent, considering that his offer was rejected, made a larger offer, which was refused; the apparent reason being that the seller considered himself obligated to complete the contract with the lessee. It cannot reasonably be supposed that the parties contemplated the passing of title twice, with the necessary conveyancing and insurance expenses, in case the lessee exercised its option, once to the bidder and by him to the lessee, yet if we follow the argument of the defendants such would be the effect.

The bidder could not possibly get a clear title if the option were exercised, and, as a matter of fact, he would have nothing but the bare legal title with an equitable duty to convey it immediately to the lessee. The vendee has the right not merely to have conveyed to him a good legal title, but an indubitable one. Every title is doubtful which invites or exposes the party to litigation; such doubts as will, and ought to, induce a prudent man to pause and hesitate in accepting a title, prevent it from being marketable: Stone *v.* Carter, 48 Pa. Superior Ct. 236, 251. In the present case the bidder would not even get a doubtful title, but one which was certain to be taken from him by the enforcement of the equity of the lessee, and it cannot be said that the parties anticipated the sale of a contingent title. Although the plaintiffs' decedent had knowledge of the outstanding option, he did not anticipate taking the legal title subject to the equity of a prior vendee, for no contract for the sale of the land to the lessee was completed until after the plaintiffs' decedent had made his bid. On the contrary, the option does not mature into a binding agreement until exercised: Barton *v.* Thaw, 246 Pa. 348; Markley *v.* Godfrey, 254 Pa. 99. Therefore, the natural and reasonable construction of the present contract, taken from the circumstances of the transaction and the spirit and intention of the parties, as indicated by their actions, would be that the bid of the plaintiffs' decedent was merely an offer to purchase, contingent upon the exercise of the option by the lessee, and that as soon as the lessee

1 D. & C.

elected to buy under the option, a contract with the lessor was made and the executory contract with the bidder fell.

It follows then that the hand-money paid to the defendants as agents for the owners was in the nature of a deposit on account of the purchase price, which, upon the failure of the contract, became returnable to the bidder. The vendor certainly was not entitled to retain this amount as a forfeit when the contract failed through no fault of the plaintiffs, and, therefore, the defendants as agents must pay over the entire amount to the plaintiffs and seek compensation from the vendors who engaged them.

The affidavit of defence is insufficient, for it only suggests a duty on the plaintiffs which is not warranted by a reasonable interpretation of the agreement. It shows that the rights of the defendants are dependent upon those of the owner. Under the contract the owner acquired no right to the down-money after the election of the lessee, and, therefore, his agents cannot set up his claim to a lien against funds which do not belong to the principal.

It is true that the auctioneer is the purchaser's agent once the property is knocked off: Veazie *v.* Williams, 8 How. (U. S.) 134; 12 L. Ed. 1018. That is so, however, on the-assumption that the title passes, and the title does not pass to the bidder in this case. The auctioneers have acted entirely for the proposed vendors. The latter cannot perform his undertaking with plaintiffs. As a stakeholder, the auctioneers must return the deposit to the purchaser: Teaffe *v.* Simmons, 11 Allen (Mass.), 342; Warvelle on Vendors, § 256.

Rule for judgment is made absolute.